

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-15-00381-CR
### NO. 02-15-00382-CR

JOHNNY LEON MOORE, III                                        APPELLANT

V.

THE STATE OF TEXAS                                                  STATE

----------

### FROM THE 271ST DISTRICT COURT OF WISE COUNTY
### TRIAL COURT NOS. CR18168, CR18172

----------

## MEMORANDUM OPINION[1]

----------

Appellant Johnny Leon Moore, III appeals from his convictions for aggravated assault with a deadly weapon and arson with intent to damage or destroy a habitation. In two issues, Moore argues that the trial court abused its discretion by failing to conduct either an informal inquiry or a formal examination

---

[1]*See* Tex. R. App. P. 47.4.

of his competency. We conclude that the trial court did not abuse its discretion and affirm the trial court's judgments.

## I. BACKGROUND

### A. FACTS OF THE OFFENSES

On October 4, 2014, Moore and his girlfriend, Patricia Kay Woods, began arguing, and Moore began to hit her with his fists. When Woods tried to leave the home, Moore picked up a gallon can of kerosene, poured some of it onto the floor, and said, "I should burn this whole place down." Woods slipped on the spilled kerosene and fell to the floor. Moore poured some of the kerosene on Woods and asked her if she was "ready to die." Moore got a lighter from his pocket and lit the kerosene on the floor, which quickly spread to Woods. As Woods and her home began to burn, Moore "began to panic, he picked [Woods] up and threw her out of the trailer." Woods and Moore were able to extinguish the flames on Woods, but Moore began beating Woods anew and threatening to kill her if she told anyone what Moore had done.

Woods convinced Moore to drive her to the hospital and, on the way, they concocted a cover story for how the fire started: Woods was "smoking a cigarette and the kerosene fell over." Moore told Woods that he would kill her if she deviated from this story. At the hospital, Moore told medical personnel that "Woods was filling a lantern with kerosene while smoking a cigarette and . . . caused a fire that had burned her and damaged their residence." Woods was diagnosed with second- and third-degree burns to the lower half of her body.

Woods eventually called the police from the hospital and reported that Moore had set the fire that burned her. During the subsequent police investigation, Moore continued to tell police that Woods had set the fire while smoking a cigarette. When an officer confronted Moore with the fact that his explanation was "physically impossible," Moore claimed to have blacked out from the moment after he poured kerosene on Woods until he pulled her from the burning trailer. He continued to deny igniting the kerosene.

### B. MENTAL ASSESSMENTS AND INDICTMENTS

After his arrest, the Fire Marshall for Wise County requested that Moore be "assessed" at a regional mental-health center, Helen Farabee Centers (the center).[2] In November 2014 while he was still in jail, Moore initially spoke with counselors at the center and reported that he had bipolar disorder and took medication for it. He also represented that he had "black outs," auditory and visual hallucinations, and paranoia. Based on the information recounted by Moore, the center diagnosed him with (1) bipolar disorder, most recent episode depressive, with psychosis and (2) polysubstance dependency. The center prescribed and administered Lithium and Trazodone to Moore after he was incarcerated on these charges.

On December 18, 2014, a grand jury indicted Moore with (1) aggravated assault with a deadly weapon—a combustible or flammable liquid or material—

---

[2]It appears Moore had previously been assessed by the center in March 2013 on a "Self Referral" and was diagnosed with amphetamine dependence.

3

and (2) arson with the intent to damage or destroy a habitation. The arson indictment included a deadly-weapon notice, alleging that Moore used a combustible or flammable liquid or material during the commission of the arson. In each case, the State filed a notice of enhancement, alleging that Moore had been previously convicted of a felony, to increase the available punishment range to that of a first-degree felony. *See* Tex. Penal Code Ann. § 12.42(b) (West Supp. 2016).

In January 2015, the center conducted a diagnostic evaluation of Moore and diagnosed him with (1) bipolar disorder, most recent episode depressive, with psychosis, (2) polysubstance dependency, and (3) personality disorder with paranoid and antisocial features. During this evaluation, the center noted that Moore's "[b]asic insight and judgment are intact." Moore reported that his current medication prescribed by the center made him "feel a lot better." He stated that although he had hallucinations and paranoia in the past and as recently as right before his arrest, the medication "greatly reduced" those symptoms. Moore was "alert and oriented," "cooperative," attentive, and coherent. Moore continued to show improvement while on the prescribed medication, which continued at least through September 2015.

### C. GUILTY PLEAS, PRESENTENCE-INVESTIGATION REPORT, AND SENTENCING

On October 5, 2015, Moore pleaded guilty to both indictments without the benefit of a plea-bargain agreement. Moore signed written plea admonishments that specifically reflected he was "mentally competent and aware of the possible

4

punishment and the consequences of my plea[s], which [are] knowingly, freely, and voluntarily entered." At the plea hearing, the court asked Moore if he had reviewed and understood "everything in both plea admonishments" and whether they were "true and correct." To each question, Moore responded, "Yes, sir." Moore's counsel further questioned him about the voluntariness of his guilty pleas, and Moore affirmed that he was pleading guilty freely and voluntarily and that he understood "all of [his] rights." The trial court found Moore guilty of both offenses and ordered a presentence-investigation report (the report) be prepared for sentencing. *See* Tex. Code Crim. Proc. Ann. arts. 37.07, § 3(d), 42.12, § 9 (West Supp. 2016).

The supervision officers who prepared the report noted that Moore again stated he did not remember lighting the kerosene, but he did remember pouring it on the floor. Moore reported to the supervision officers that "he has been diagnosed as having Depression, being Bipolar, Schizophrenic, and having psychotic tendencies while being in jail" and that he had been "hearing voices and seeing things that were not there" before receiving medication. In the report, the supervision officers recognized that the center had conducted a mental-health evaluation of Moore in January 2015 and had diagnosed Moore with bipolar disorder with psychotic features, polysubstance dependence, and personality disorder with paranoid and antisocial features. The supervision officers concluded that Moore was not "a suitable candidate for probation." The

5

supervision officers also noted that the State recommended a fifty-year sentence.[3]

At the October 20, 2015 sentencing hearing, Moore pleaded true to the enhancement paragraph alleged for each offense. Woods testified to the facts of the offenses. One of the supervision officers who prepared the report, Tammie McCollum, testified that Moore's recounting of the facts of the offenses was "[n]ot even close" to what actually happened and that Moore "very seriously" minimized his involvement, was "flippant" about what happened, and showed "no remorse." During cross-examination, McCollum admitted that she had reviewed a "lengthy report" regarding Moore's diagnosis of bipolar disorder with severe psychotic features, which "occurred after he was incarcerated."[4] McCollum agreed that such a diagnosis "can affect their behavior with regard to being lawful and following the law and so forth." Moore's counsel asserted in closing arguments that the trial court should consider that Moore had a diagnosed mental illness that improved once he was medicated. The trial court then found the deadly-weapon allegations true and sentenced Moore to ninety-nine years' confinement

---

[3]This recommendation was based on a previous offer from the State, which Moore presumably rejected.

[4]Moore did not introduce the report that McCollum reviewed, but he later introduced into evidence the center's records concerning Moore, including the January 2015 diagnostic evaluation. We assume the center's records are the "lengthy report" McCollum reviewed in preparing the report.

for each offense, to be served concurrently.  *See* Tex. Penal Code Ann. § 3.03 (West Supp. 2016).

## II. COMPETENCY AT SENTENCING

Moore argues that the trial court abused its discretion by failing to conduct a sua sponte, informal competency inquiry at sentencing based on the testimony at the sentencing hearing and the report.[5]  He also asserts this same evidence mandated a formal competency examination, again resulting in an abuse of discretion from the failure to do so.  The substance of his arguments, however, focuses solely on the lack of an informal inquiry.

### A.  Standard of Review and Statutory Scheme

We review for an abuse of discretion a trial court's implied decision not to conduct an informal inquiry into an accused's competency to stand trial in light of the evidence adduced at punishment.  *Luna v. State*, 268 S.W.3d 594, 600 (Tex. Crim. App. 2008), *cert. denied*, 558 U.S. 833 (2009); *Gray v. State*, 257 S.W.3d 825, 829 (Tex. App.—Texarkana 2008, pet. ref'd).

A defendant is incompetent if he is does not have the ability to consult with his attorney or a rational and factual understanding of the proceeding.  *See* Tex. Code Crim. Proc. Ann. art. 46B.003(a) (West 2006).  A defendant must be

---

[5]Moore solely argues on appeal that there was a suggestion of incompetency at sentencing and does not assert that there was a suggestion of incompetency at the time he pleaded guilty.  *See* Tex. Code Crim. Proc. Ann. art. 26.13(b) (West Supp. 2016) (requiring defendant to be mentally competent before trial court may accept guilty plea).

mentally competent to be sentenced but he is presumed to be so. *See id.* arts. 42.07(2), 46B.003(b) (West 2006); *Casey v. State*, 924 S.W.2d 946, 949 (Tex. Crim. App. 1996). If evidence suggesting a defendant is incompetent comes to the trial court's attention, the court is required to "determine by informal inquiry whether there is some evidence from any source that would support a finding that the defendant may be incompetent to stand trial." Tex. Code Crim. Proc. Ann. art. 46B.004(c) (West Supp. 2016). The suggestion of incompetency is the "threshold requirement" for an informal inquiry and "may consist solely of a representation from any credible source that the defendant may be incompetent." *Id.* art. 46B.004(c-1). An informal inquiry need not be exhaustive. *White v. State*, No. 02-12-00087-CR, 2013 WL 4210827, at *2 (Tex. App.—Fort Worth Aug. 15, 2013, no pet.) (mem. op., not designated for publication). If, after an informal inquiry, the trial court determines that evidence exists to support a finding that the defendant is incompetent to be sentenced, the trial court must order a formal examination of his competency. *See* Tex. Code Crim. Proc. Ann. art. 46B.005(a) (West 2006); *Turner v. State*, 422 S.W.3d 676, 692 (Tex. Crim. App. 2013).

## B. APPLICATION

After the trial court accepted Moore's guilty pleas but before he was sentenced, the trial court received evidence that Moore had a diagnosed mental illness. However, that evidence also showed that Moore had improved after he began taking the appropriate medication, which occurred after he was arrested and evaluated by the center. His symptoms, such as auditory and visual

8

hallucinations, were ameliorated by the medication, and the center noted that he was coherent, alert, and cooperative. McCollum's testimony that Moore's recounting of the facts leading to the aggravated assault and arson was not "close" to the facts he judicially admitted by pleading guilty do not suggest that he was "not grounded in reality" and thus incompetent to be sentenced as suggested by Moore's counsel. It merely showed, as McCollum testified, that Moore continued to minimize his involvement, not that he was unable to understand the import of the sentencing hearing or aid in his defense. Similarly, Moore's actions during the offenses, which his counsel characterizes as "bizarre," do not suggest his incompetence at sentencing. Criminal offenses frequently seem senseless, but the acts themselves do not necessarily equate to a suggestion of incompetence. *See generally* Tex. Code Crim. Proc. Ann. art. 46B.003(a) (defining incompetence).

None of these facts suggested Moore was incompetent to be sentenced. *See Jackson v. State*, 391 S.W.3d 139, 143 (Tex. Crim. App. 2012) (holding relevant time frame for determining competence is at the time of the challenged proceeding). The record does not reflect that Moore in any way acted inappropriately at or was unable to participate in the sentencing hearing. Moore's participation at the sentencing hearing showed just the opposite and was uniformly consistent with competence. The evidence the trial court had before it showed that although Moore previously had been diagnosed with a mental illness, his symptoms were controlled with medication, which was being

9

administered under the care of the center. Indeed, the records made available to the trial court before sentencing supported the trial court's initial finding of competence and no one raised any question at sentencing that Moore was incompetent to be sentenced. Moore's counsel merely argued that his mental illness "might explain" his actions at the time of the offense. Trial counsel emphasized that Moore's mental illness was "much better" once he was medicated by the center.

We hold these facts, showing at most a past impairment, did not require the trial court to conduct an informal inquiry (and certainly not a formal examination) into Moore's competency to be sentenced. *See, e.g.*, *Anderson v. State*, No. 13-14-00485-CR, 2016 WL 3364977, at *3 (Tex. App.—Corpus Christi June 16, 2016, no pet.) (mem. op., not designated for publication); *Baker v. State*, No. 04-14-00676-CR, 2016 WL 1588278, at *2–3 (Tex. App.—San Antonio Apr. 20, 2016, pet. filed) (mem. op., not designated for publication); *Clemens v. State*, Nos. 05-15-00025-CR, 05-15-00027-CR, 2016 WL 347149, at *3 (Tex. App.—Dallas Jan. 28, 2016, no pet.) (mem. op., not designated for publication); *Bill v. State*, Nos. 01-12-00124-CR, 01-12-00125-CR, 2012 WL 4857922, at *3 (Tex. App.—Houston [1st Dist.] Oct. 11, 2012, no pet.) (mem. op., not designated for publication). Indeed, a defendant's mental illness, without evidence from a credible source that he cannot rationally understand the proceedings against him or that he cannot engage rationally with counsel in the pursuit of his own best interest, does not equate to a suggestion of incompetency. *See Turner*,

10

422 S.W.3d at 691; *Demarsh v. State*, No. 02-15-00210-CR, 2016 WL 1267702, at \*5–6 (Tex. App.—Fort Worth Mar. 31, 2016, no pet.) (mem. op., not designated for publication); *accord Thompson v. Johnson*, 7 F. Supp. 2d 848, 860–61 (S.D. Tex. 1998) ("[A] history of mental illness and/or attempts at suicide do not *per se* establish a defendant's incompetency to stand trial.").

## III.  CONCLUSION

Because the trial court did not abuse its discretion by implicitly declining to conduct an informal inquiry into Moore's competence before sentencing, we overrule Moore's issues and affirm the trial court's judgments.  *See* Tex. R. App. P. 43.2(a).

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL:  MEIER, GABRIEL, and SUDDERTH, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: August 25, 2016

11